STRONG (CONSOLIDATED FRUIT–JAR CO. v.). See Case No. 3,130.

---

## Case No. 13,542.

### STRONG v. GOLDMAN et al.

[8 Biss. 552.] [1]

Circuit Court, N. D. Illinois. June, 1879.

CREDITOR'S BILL—ILLINOIS STATUTE—FRAUD—RECEIVER.

1. The Illinois statute of 1877 concerning assignments for the benefit of creditors and providing that the county court shall have jurisdiction over assignees and the execution of the statute, does not deprive courts of equity of jurisdiction of a creditor's bill to set aside a fraudulent assignment, or preference consummated prior to the making of the assignment.

[Cited in Clapp v. Dittman, 21 Fed. 18.]

[Cited in brief in Preston v. Spalding, 120 Ill. 208, 10 N. E. 905.]

2. Where the debtor had made disposition of from $150.000 to $200.000 worth of stock without accounting for the proceeds, or paying his indebtedness, and then made an assignment under the state law, of about $18.000 worth of goods, it was held that this was a proper case for the appointment of a receiver, for the purpose of unearthing if possible the disposition of the property.

This was a creditor's bill filed by complainant [Edward Strong] as judgment creditor of Philip Goldman. The bill alleged in substance the recovery of three judgments in this court against Goldman in favor of the complainant; that execution was issued, and returned no property found; that up to September 1, 1878, Goldman was engaged in the wholesale boot and shoe business in Chicago

---

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

as manufacturer and dealer; that he had a large amount of merchandise in his possession, and claimed to be worth over eighty thousand dollars, over and above all his liabilities; that during the months of August and September he made very large purchases of goods, and had in his possession, as the result of these purchases, and of the stock previously obtained, something over $200,000 worth of goods; that sometime during the month of August he commenced without the payment of debts to deplete his stock, and to dispose of his property, and continued to do so until some time in November last when he made an assignment to one Beiersdorf for the benefit of his creditors. The property thus assigned at that time amounted only to some $16,000 or $18,000, and the bill charged that in the course of about four months the debtor had disposed of and made way with something like $150,-000 or $200,000 worth of goods, and left a very large amount of indebtedness uncancelled and unprovided for, and then made over to Beiersdorf, for the benefit of his creditors, this small remnant of his stock in trade. It was charged that the creditors did not know with any degree of certainty what disposition was made of it—whether he gave the goods away, secreted them, or made fraudulent sales—but it was charged generally that he had had dealings with sundry persons who were made parties defendant to the bill. The defendant by his answer denied all fraud in the case, especially all specific allegations of fraud in the bill, and denied all fraudulent collusion or dealings with the defendants who were specially charged with having had fraudulent dealings with him. These defendants also denied that they had fraudulent dealings with Goldman. Goldman did not deny that he had this large amount of assets on hand at the time charged in the bill, nor that when he came to make his assignment in November he had no such amount of assets on hand. He did not state what he had done with them. He admitted the existence of the immense indebtedness, and a commercial indebtedness, contracted in the due course of business for goods purchased.

Tenney, Flower & Abercrombie, for complainant.

McClellan & Tewkesbury, for defendants.

BLODGETT, District Judge. The question is made, that inasmuch as the statute of Illinois passed in 1877, (Rev. St. Ill., Hurd's Ed., 1877, c. 10a), regulating the method of executing assignments made for the benefit of creditors clothed the assignee with power to execute the trust under the direction of the county court, after having given bond approved by the county judge, that a court of equity is from this time forward deprived of the power to exercise the ordinary jurisdiction, with which they have been heretofore clothed for entertaining creditors' bills and searching out fraudulent conveyances to set them aside, and that the whole subject-matter of investigating the affairs of a debtor who has seen fit to make an assignment is relegated to the county court under the operation of this law. I cannot give any such scope to this statute regulating assignments. Undoubtedly the intention of the Illinois legislature was as far as possible to give the aid of the county court to the execution of assignments, but it nowhere clothes the voluntary assignee with power to set aside a fraudulent assignment which the assignor had made, or any other fraudulent acts. It does not give him authority to set aside a preference which had been made even upon the very eve of the assignment. It simply declares that any preference made in the assignment itself shall be void; but suppose that a debtor the very day that he makes his voluntary assignment to the assignee for the benefit of his creditors takes all his ready money and pays certain creditors in full, and then assigns the remnant of his estate for the benefit of his other creditors; there is no method by which the voluntary assignee can get behind his assignment—no method given by the statute by which he can get behind these preferences and set them aside, but he must simply step into the shoes of the debtor himself, and execute the assignment under the law without the power to challenge or cause to be set aside any of the fraudulent transactions that the party may have been guilty of, up to the very moment he made his assignment. This is no question of conflict of jurisdiction between the county court and this court; but it is a question whether the legislature intended to clothe the county court solely with power of administering the affairs of a debtor who has made a voluntary assignment so that creditors could not attack, except through the county court and the assignee, a fraudulent assignment, or fraudulent actions and preferences consummated prior to the making of the assignment. I do not think there is any fair inference in the language of the law itself for any such intention on the part of the legislature. It is not a question of conflict between the county court of Cook county and the federal court of this circuit, but it is a question between the county court and courts of equity, and in that light, it seems to me, the inference cannot be deduced that the legislature intended to repeal a portion of the chancery act of this state, which has been in force over forty years, authorizing the filing of creditor's bills, and the pursuit through the agency and machinery of a court of equity of equitable assets and setting aside fraudulent conveyances. It did not intend to denude courts of the power they have so long exercised by the mere placing of voluntary assignees within the control of some tribunal which could overlook and control their transactions.

Then the question is, should this court appoint a receiver under the prayer in this bill, and the facts disclosed? As I have already said the complainants in this case ask that a receiver shall be appointed for the purpose of bringing suits and generally investigating the affairs of this debtor, and taking possession of any equitable assets which he may have. Inasmuch as the debtor himself, and the defendants who are charged in the bill with having had collusive or fraudulent dealings, all deny that they ever had any fraudulent dealings such as ought to be set aside, or have in their possession any assets they ought to surrender, it is claimed there is no reason shown in that regard for the appointment of a receiver, and that a receiver should not be appointed until there is something for him to receive—some disclosure made of assets which he ought to have possession of. The answer is this: There is a disclosure, to some extent, that this man has by some method made way with a large amount of assets. The precise manner in which he has done it is not shown, nor perhaps known to the creditors. The complainant does not aver it in his bill any further than he avers fraudulent dealings and collusion with the parties made defendant. The fact that those parties deny that they have any assets they ought to surrender, does not necessarily involve the assumption that he has made no fraudulent disposition of his property. At most, it only involves the conclusion that the complainant has not yet discovered to whom this property has been conveyed. While it is true Goldman does emphatically deny that he has made any fraudulent disposition of property, at the same time the fact remains unchallenged that he has made disposition of an immense amount of his estate without accounting for the proceeds of it, and has left much of his indebtedness unpaid. On this showing, it seems to me, there is a case made for the appointment of a receiver to be clothed with powers, competent for the court to confer, for the purpose of bringing suits, or prosecuting this suit, and unearthing, if it is possible, the disposition this man has made of this property. A receiver will, therefore, be appointed with such powers as the court may now or hereafter confer upon him in the premises.